1

2

3

4

5

6

7

8               **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  PAULA GRANDERSON,                    No. CIV S-06-1147-CMK

12          Plaintiff,

13      vs.                          <u>MEMORANDUM OPINION AND ORDER</u>

14  MICHAEL J. ASTRUE,[1]
    Commissioner of Social Security,

15
            Defendant.

16
    _____/

17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20  Pursuant to the consent of the parties, this case is before the undersigned for final decision on

21  plaintiff's motion for summary judgment (Docs. 22 and 23) and defendant's cross-motion for

22  summary judgment (Doc. 24).

23  / / /

24  _____

25      [1]      Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue is
    substituted for his predecessor.  The Clerk of the Court is directed to update the docket to reflect
26  the above caption.

**I.  BACKGROUND**

Plaintiff applied for supplemental security income benefits on August 29, 2003, based on disability.  In her application, plaintiff claims that her impairment began on November 1, 2002.[2]  Plaintiff claims her disability consists of a combination of "physical ailments including chronic back pain with acute radiculopathic process, moderately severe carpal tunnel syndrome bilaterally, ulnar entrapment neuropathy bilaterally a superimposed more diffuse peripheral neuropathy in the upper extremities."  Plaintiff also states that she "suffers from a combination of mental ailments including Bipolar Disorder, NOS with a history of Post Traumatic Stress Disorder, alcohol dependence in early remission, and Attention Deficit Hyperactivity Disorder."  Plaintiff is a United States citizen born November 2, 1966, with an eleventh grade education.

A.    **Summary of the Evidence**

The court accepts plaintiff's summary of the medical evidence.  Plaintiff states:

> According to consultative examiner Rebecca Jordan, M.D., plaintiff has a history of bilateral hand and feet numbness which is getting worse as well as neck pain and back pain radiating into both legs.  Her impression:  "This 38-year-old female has chronic low back [pain], with radiculopathy, with MRI findings of diffuse disc bulging at L4-5.  Subjectively, she reports having constant pain with intensity ranging from moderate to severe.  Examination showed some tenderness and decrease in flexion.  Records also indicate carpal tunnel syndrome, moderately severe per MCV.  Examination showed associated sensory changes . . . .  She is limited to occasional handling and manipulation in view of the carpal tunnel syndrome.  Lifting and carrying is limited to 10 pounds frequently and 20 pounds occasional[ly] in view of the combination of problems listed above."  (TR 192, 193).  Dr. Jordan opined that plaintiff has problems with handling (gross manipulations); fingering (fine manipulations); and feeling (skin receptors).  (TR 197).
> According to treating neurologist Firdos Scheikh, M.D., her impression was:
> 1.    In summary this study shows evidence of moderate motor and sensory carpal tunnel syndrome bilaterally and is worse on the right.
> 2.    There is in addition evidence of motor and sensory ulnar entrapment neuropathy on the left and sensory on the right.

---

[2]    In her motion for summary judgment, plaintiff states that she has been disabled since 2004.

2

3.      There is a superimposed more diffuse predominantly axonal sensory and motor peripheral neuropathy in the upper and lower extremities.  Toxic, metabolic, vasculitic, paraneoplastic, infectious as well as nutritionally deficient causes need to be considered.

4.      There is evidence of denervation in the right L5-S1 lumbosacral levels which suggests an acute radiculopathic process.  Clinical and if symptoms do not improve neuroradiological correlation is recommended.  (TR 244).

According to Sacramento County Mental Health in February 2005, plaintiff had a relapse and was restarted on Prozac at 20 mg.  (TR 262).  According to Sacramento County Mental Health's Dr. Mistry, in August 2005, plaintiff suffered from Major Depressive Disorder, recurrent, moderate; r/o Dysthymia, Cyclothymial PTSD with a GAF of 50.  (TR 265-266).

In January 2006, Anna Marquez of Sacramento County Mental Health noted that plaintiff was a 38-year-old woman with previous diagnoses of MDD, PTSD, cocaine and alcohol dependence in early remission and stopped her Prozac and initiated Lamictal.  (TR 256).

On February 9, 2006, Sacramento County Mental Health APSS Clinic's Anna Marquez, M.D., noted that plaintiff related a history of scholastic problems dating back many years.  She reviewed each of the 18 criteria in the DSM-IV-TR for ADHD, and plaintiff endorses all of them.  (TR 258).

B.      **Procedural History**

Plaintiff's claim was initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on January 5, 2005, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.  In his March 15, 2005, decision, the ALJ found that plaintiff had severe impairments.  Specifically, he stated:

. . . The record supports a finding that the claimant's alcohol dependence, cocaine dependence, depression, diffuse disc bulge at L4-5 with radiculopathy, obesity, and bilateral carpal tunnel syndrome limit her ability to perform basic work activities.  Therefore, these impairments are considered "severe" within the meaning of the Social Security Act and Regulations.  After a thorough review of all the evidence, it is the conclusion of the undersigned that drug addiction and alcoholism is a contributing factor material to the determination of disability.

The ALJ concluded that plaintiff has the residual functional capacity "to lift/carry/push/pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk 6 hours in an 8-hour day with

3

1  customary breaks; and sit at least 6 hours in an 8-hour day." He also found that plaintiff is

2  limited to "occasional bending, stooping, crouching, handling, and manipulation." The ALJ

3  characterized this functional capacity as the ability to perform "substantially all of the full range

4  of light work" and that this ability is not compromised by non-exertional limitations. The ALJ

5  found that plaintiff's March 15, 2005, hearing testimony was not fully credible.

6              Following her request for review, the Appeals Council remanded the case to the

7  ALJ on July 1, 2005. The Appeals Council directed the ALJ to do the following on remand:

8       1.    Obtain additional evidence concerning the claimant's impairments in
             order to complete the administrative record in accordance with the
9            regulatory standard regarding consultative examinations and existing
             medical evidence. The additional evidence may include, if warranted and
10           available, a consultative examination and medical source statements about
             what the claimant can still do despite the impairment. The Administrative
11           Law Judge may find it helpful to obtain the help of the local Social
             Security district office in developing the claimant's work activity;
12
        2.    Consider the claimant's work activity under the guidelines set forth in 20
13           C.F.R. § 404.1575, providing rationale for the conclusions reached;

14      3.    Give further consideration to the claimant's maximum residual functional
             capacity and provide appropriate rationale with specific references to
15           evidence of record in support of the assessed limitations (20 C.F.R. §
             416.954 and Social Security Ruling 96-8p); and
16
        4.    Obtain evidence from a vocational expert to clarify the effect of the
17           assessed limitations on the claimant's occupational base (Social Security
             Ruling 83-14). The hypothetical questions should reflect the specific
18           capacity/limitations established by the record as a whole. The
             Administrative Law Judge will ask the vocational expert to identify
19           examples of appropriate jobs and to state the incidence of such jobs in the
             national economy (20 C.F.R. § 416.966). Further, before relying on the
20           vocational expert evidence, the Administrative Law Judge will identify
             and resolve any conflicts between the occupational evidence provided by
21           the vocational expert and information in the Dictionary of Occupational
             Titles (DOT) and its companion publication, the Selected Characteristics
22           of Occupations (Social Security Ruling 00-4p).

23  Pursuant to the Appeals Council's order, plaintiff was offered another hearing which was held on

24  December 5, 2005. In his December 19, 2005, decision following remand, the same ALJ made

25  the following findings:

26      1.    The claimant has not engaged in substantial gainful activity since the

4

1    alleged onset of disability;

2    2.    The Claimant has an impairment or combination of impairments
           considered severe . . . ;
3

4    3.    These medically determinable impairments do not meet or medically equal
           one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

5    4.    The undersigned finds the claimant's allegations regarding her limitations
           are not totally credible for the reasons set forth in the body of the decision;
6

7    5.    The undersigned has carefully considered all of the medical opinions in
           the record regarding the severity of the claimant's impairments . . . ;

8    6.    The claimant has the residual functional capacity to lift/carry/push/pull 10
           pounds frequently and 20 pounds occasionally; stand and/or walk for 6
9          hours in an 8-hour day with customary breaks, and sit at least 6 hours in
           an 8-hour day; further, the claimant is limited to occasional bending,
10         stooping, crouching, handling, fine manipulation, and feeling with the
           fingers;
11

12   7.    The claimant's past relevant work as childcare provider did not require the
           performance of work-related activities precluded by her residual
13         functional capacity;

14   8.    The claimant's medically determinable alcohol dependence, cocaine
           dependence, depression, diffuse disc bulge at L4-5 with radiculopathy,
15         obesity, and bilateral carpal tunnel syndrome do not prevent the claimant
           from performing her past relevant work; and

16   9.    The claimant was not under a disability as defined in the Social Security
           Act, at any time through the date of the decision.
17

18        Based on these findings, the ALJ concluded that plaintiff was not disabled and,

19   therefore, not entitled to benefits.  After the Appeals Council declined further review on May 12,

20   2006, this appeal followed.

21                                **II.  STANDARD OF REVIEW**

22        The court reviews the Commissioner's final decision to determine whether it is:

23   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

24   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

25   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520,

26   521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

                                              5

1   support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole,

2   including both the evidence that supports and detracts from the Commissioner's conclusion,

3   must be considered and weighed.  <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986);

4   <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the

5   Commissioner's decision simply by isolating a specific quantum of supporting evidence.  <u>See</u>

6   <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

7   administrative findings, or if there is conflicting evidence supporting a particular finding, the

8   finding of the Commissioner is conclusive.  <u>See</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th

9   Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation,

10  one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas</u>

11  <u>v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338

13  (9th Cir. 1988).

## III.  DISCUSSION

15          In her motion for summary judgment, plaintiff raises two issues.  She argues:

16                 The ALJ committed two errors in reaching his flawed decision of
                "not disabled."  First, the ALJ failed to develop the record with respect to
17              her mental illness.  Second, the ALJ failed to consider the findings of
                plaintiff's treating doctors with respect to their opinions of the severity of
18              plaintiff's mental health issues.

19  Thus, plaintiff only challenges the ALJ's findings with respect to her mental impairments.

20  Specifically, plaintiff does not challenge the ALJ's findings and conclusions regarding her

21  physical impairments.[3]

---

24          [3]      This is surprising given the ALJ's conclusion that plaintiff's residual functional
    capacity does not preclude her past relevant work as a childcare worker.  Presumably any work
    with small children would require frequently lifting/carrying/pushing/pulling more than 10
25  pounds and more than occasional bending, stooping, crouching, handling, fine manipulation, and
    feeling with the fingers.  But, plaintiff does not make this argument and, so, it is not before the
26  court.

1      **A.      Development of the Record**

2              Plaintiff's argument, in its entirety, is as follows:

3                      Here, the ALJ failed to fully develop the record in that he was
        aware that the plaintiff had previously treated with Sacramento County
4       Mental Health, he was aware that she testified that she had a mental health
        appointment just after the initial January 2005 hearing (TR 281); and he
5       failed to ask her about her mental health treatment at the December 2005
        hearing, assumed that she had no further mental health treatment in his
6       opinion and used that false assumption against her despite the fact that she
        had treatment at which her treating doctor continued to diagnose her with
7       a Major Depressive Disorder and Post Traumatic Stress Disorder with a
        GAF of 50.  Had the ALJ merely asked the plaintiff if she had recent
8       mental health treatment, he would have been informed of her recent doctor
        visits and the ALJ could have subpoenaed the records provided to the
9       Appeals Council which showed the diagnosis.

10    As defendant correctly notes, however, the ALJ's duty to develop the record arises when the

11    existing record is ambiguous or inadequate to make a disability determination.  See Mayes v.

12    Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).  To the extent the evidence of plaintiff's

13    mental impairments is minimal, that is the product of plaintiff's failure to keep her appointments

14    and not the ALJ's failure to develop the record.

15              Moreover, in light of the limited evidence, the ALJ in fact attempted to develop

16    the record further by directing plaintiff to submit to a consultative psychiatric examination.  In

17    this regard, the ALJ stated:

18                      The claimant has not submitted any further mental health treatment
        records.  Accordingly, following remand by the Appeals Council,
19      arrangements were made for the claimant to undergo consultative
        psychiatric evaluation by Timothy W. Canty, M.D., on September 17,
20      2005.  Although the claimant indicated that she would keep this
        appointment . . ., she failed to do so.  The claimant subsequently contacted
21      the Department of Social Services by telephone on September 25, 2005, in
        response to their . . . letter.  The Department of Social Services returned
22      the claimant's telephone call on September 26, 2005.  During this
        conversation the claimant stated she would attend the examination if
23      rescheduled.  She was admonished that the appointment would be
        rescheduled just once and that failure to keep the appointment could result
24      in denial of her claim . . . .  The examination was subsequently
        rescheduled for October 18, 2005, with Dr. Canty; however, the claimant
25      failed to keep this appointment as well.

26    Thus, once again, any lack of mental health records is plaintiff's fault, not the ALJ's.

                                                    7

Finally, the court finds plaintiff's argument that the ALJ was aware that plaintiff had mental health appointments scheduled to occur after the first hearing but failed to ask plaintiff about those appointments is specious. Why plaintiff puts this burden on the ALJ when it is her burden to establish disability is a mystery. As to any mental health records generated subsequent to the first hearing, plaintiff could just as easily have submitted those records on her own or through her attorney.

**B.    Severity of Plaintiff's Mental Impairments**

Plaintiff asserts that the ALJ failed to ". . . fully credit the opinion of Claire Rene, M.D., plaintiff's treating doctor, by minimizing the effect of her major depressive disorder and post traumatic stress disorder." As to Dr. Rene, the ALJ stated:

> The claimant established with Sacramento County Adult Mental Health Services on July 15, 2004. She presented to Clare Rene, M.D., at that time with a complaint of an eight year history of depression. She also reported a history of trauma and more than a ten year history of cocaine dependence and alcohol dependence. The claimant indicated that her substance abuse was in remission and had been for one year at the time of evaluation. Symptoms reported by the claimant included feeling tired, difficulty sleeping, negative feelings, isolation, suicidal thoughts when using alcohol and drugs, feelings of worthlessness, frequent irritability, poor concentration, excess appetite, history of assaulting others, intrusive memories of past trauma, hypervigilence, and poor concentration. With respect to her substance dependence, the claimant reported that she would need increasing amounts of alcohol and cocaine to achieve the desired effect and she engaged in stealing and prostitution to obtain money for the purpose of using. The claimant further reported two episodes of suicide attempts when using alcohol and cocaine. Despite her impression the claimant might be exaggerating her symptoms of depression, Dr. Rene nevertheless indicated a diagnosis of major depressive disorder. She also indicated diagnoses of post traumatic stress disorder, alcohol dependence in remission by claimant's report, and cocaine dependence in remission by claimant's report. Dr. Rene prescribed Fluoxetine (Prozac). On August 16, 2004, the claimant requested prescription refill; however, this request was denied due to her failure to be present for required monitoring. The claimant failed to keep a number of scheduled appointments and was without medication until September 10, 2004, when she was overwhelmed and tempted to use substances such as alcohol and cocaine. The claimant was noted to be clean, well groomed, smiling, and sarcastic. It was also noted that the claimant refused urine testing required for reunification with her children. Prozac was refilled. The claimant failed to keep no fewer than six scheduled appointments between September 10, 2004, and December 29, 2004. Records also indicate that a chart review conducted

in October 2004 led to the impression the claimant may be actively using substances. Specifically, it was noted that the claimant had a history of failed appointments, she appeared to be malingering for the purpose of obtaining Supplemental Security Income payments, and she refused toxicology tests for C.P.S. reunification. The claimant was apparently referred for substance abuse/addiction, and it was suggested that prescriptions of any kind be limited secondary to the claimant's substance abuse history.

The ALJ added:

. . . The record shows that although the claimant's ability to perform the basic demands of work is seriously limited by her mental impairments, those limitations arise primarily from her persistent alcohol and cocaine dependence. Pursuant to Public Law 104-21, entitlement and/or eligibility for disability benefits under the Social Security Act must be denied when drug and/or alcohol addiction is a contributing factor material to the determination of disability. Drug and/or alcohol addiction is material when it is established that the individual would not be disabled if he/she stopped using drugs or alcohol.

Applying this standard, the ALJ stated:

. . . The claimant has had very little treatment for her mental impairments. Although she established care with Sacramento County Adult Mental Health Services in July 2004, she failed to keep all subsequently scheduled appointments except one. Furthermore, the claimant has submitted no further mental health records subsequent to September 10, 2004, which suggests that she is no longer undergoing mental health treatment. Mental health professionals indicated in October 2004 that active substance use was suspected based upon the claimant's history of failed appointments, the appearance of malingering for the purpose of obtaining Supplemental Security Income payments, and her refusal to submit to toxicology tests required for C.P.S. reunification. The claimant's testimony at the hearings appears to substantiate this suspicion. Specifically, the claimant testified on January 5, 2005, that she had been clean for the past two months. She further testified that she had been using approximately $500.00 of cocaine every two days and drinking 24 beers a day. The claimant subsequently testified during the December 5, 2005, hearing that she had not used alcohol or cocaine for approximately five months, therefore, she either returned to substance abuse following the first hearing, or alternatively, had never actually quit. There is no objective evidence to suggest that the claimant has maintained sobriety for any extended period of time.

The ALJ concluded that, if plaintiff stopped using cocaine and alcohol, her ability to perform basic work activities would not be more than minimally limited.

9

1    Based on the foregoing, the foundation for the ALJ's assessment concerning

2    plaintiff's mental impairments is his application of Public Law 104-21 regarding drug and

3    alcohol addiction.  The ALJ did not reject Dr. Rene's opinion.  Rather, he concluded that

4    plaintiff's mental impairments were caused by alcohol and cocaine dependence and that, if

5    plaintiff quit using drugs and alcohol, her mental impairments would not significantly limit her

6    ability to function.  However, plaintiff offers no argument or analysis as to why this conclusion

7    is wrong.  She merely offers the conclusory statement that "[t]he Administrative Law Judge's

8    conclusion that the severity of plaintiff's condition is a product of her substance abuse is not

9    supported by substantial evidence."

10    As to application of Public Law 104-21 in this case, the burden is on plaintiff to

11    demonstrate that drug and alcohol addiction is not a material factor by showing that her mental

12    impairments would have been disabling even if drug and alcohol use ceased.  See Parra v.

13    Astrue, 481 F.3d 742, 748 (9th Cir. 2007).  Plaintiff cannot carry this burden.  To do so, she

14    would have to demonstrate that her mental impairments ". . . would remain during periods when

15    she stopped using drugs and alcohol."  See Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001)

16    (citing Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998)).

17    Other than plaintiff's inconsistent hearing testimony, the only evidence of a

18    period of sobriety consists of two progress notes from Sacramento County Mental Health, dated

19    January 19, 2006, and February 9, 2006.  These records suggest that, according to plaintiff's

20    report, she had been sober for the previous six months.  Assuming that this is true, plaintiff

21    would still have to establish that, during this six-month period, her mental impairments were still

22    disabling.  The court concludes that these progress notes do not show a disabling mental

23    impairment.  The doctor indicated that she needed more follow up to determine a proper

24    diagnosis and, at that time, only diagnosed provisional bipolar disorder.  In fact, the doctor noted

25    that she was ". . . concerned that the [patient] will not follow through adequately with treatment

26    and evaluation to get an accurate understanding of the problems she is coping with and what her

1   diagnosis is."

2          In this case, plaintiff presented no evidence that her mental impairments were

3   disabling during any period when it could be established (or even assumed) that she was not

4   using alcohol or cocaine.  Based on plaintiff's inconsistent hearing testimony concerning her

5   alcohol and drug use, and given plaintiff's failure to keep scheduled appointments or submit to a

6   urine test in order to be reunified with her children, it was reasonable for the ALJ to conclude

7   that plaintiff never stopped using alcohol and cocaine for any appreciable period of time.[4]

8                                **IV.  CONCLUSION**

9          Based on the foregoing, the court concludes that the Commissioner's final

10  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS

11  HEREBY ORDERED that:

12          1.      Plaintiff's motion for summary judgment is denied;

13          2.      Defendant's cross-motion for summary judgment is granted; and

14          3.      The Clerk of the Court is directed to enter judgment and close this file.

15  DATED: July 13, 2007

16

17

18                                              _____
                                                **CRAIG M. KELLISON**
19                                              UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25  _____

26          [4]      It is particularly shocking that plaintiff spent nearly $250.00 a day – $7,500.00 a
    months – on cocaine.

                                        11